# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

EMET, LLC,

      *Plaintiff*,

v.                                Case No.  SA-21-CV-00753-JKP-RBF

JOHNSON CONTROLS, INC.; et al.,

      *Defendants*.

## ORDER ON MOTION TO REMAND

Before the Court is a motion to remand filed by Plaintiff EMET, LLC (EMET) (ECF No. 6). With the filing of the response and reply (ECF Nos. 10, 11), the motion is ripe for ruling. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

On June 16, 2021, EMET filed suit against Johnson Controls, Inc., Donald Vince Baker, and Accu-Aire Mechanical, LLC in the 438th Judicial District Court of Bexar County, Texas (ECF No. 1-5). Plaintiff's Citation, Original Petition, and Request for Disclosures were mailed by certified mail to Johnson Controls, Inc. (JCI) on July 6, 2021 (ECF No. 1-6). JCI answered the state court petition on July 30, 2021 (ECF No. 1-7) and removed the case to federal court on August 11, 2021 (ECF No. 1).

This case presents no dispute that Defendant Donald Vince Baker (Baker) and Accu-Aire Mechanical, LLC (Accu-Aire) are nondiverse parties. And "as long as a nondiverse party remains joined, the only issue the court may consider is that of jurisdiction itself." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016). Federal courts always have "jurisdiction to determine [their] own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 622

(2002). "This limited authority permits the court to grant a motion to remand if a nondiverse party is properly joined," while also permitting "the court to deny such a motion if a party is improperly joined and, in so doing, to dismiss the party that has been improperly joined." *Int'l Energy*, 818 F.3d at 209. Regardless, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

## II. JURISDICTION

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). There is no dispute, furthermore, that 28 U.S.C. § 1332(a) provides the federal courts with original jurisdiction over all civil actions between "citizens of different States" when the amount "in controversy exceeds the sum or value of $75,000, exclusive of interest or costs." However, a "civil action otherwise removeable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *See id.* § 1441(b)(2).

A party may move to remand a previously removed case. *See* 28 U.S.C. § 1447(c). "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)). "Any ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). The removing party has the burden to show "that federal jurisdiction exists and that removal was proper." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (quoting *Mumfrey*, 719 F.3d at 397).

### III. FACTUAL ALLEGATIONS

Taken as true and viewed in the light most favorable to EMET, the original petition alleges the following. JCI manufactures and installs HVAC equipment for commercial buildings and provides "smart" technology to manage these systems. The smart technology allows JCI to provide support and diagnose issues affecting the site remotely. EMET owns and manages a building at 102 9th Street, San Antonio, Texas. As part of the building's construction, JCI's Metasys system was integrated into the building's HVAC; EMET contracted with JCI to manage it. ECF No. 1-5.

Metasys connects commercial HVAC, lighting, security, and protection systems—enabling them to communicate on a single platform. *Id.* ¶ 32. The Metasys system automates the building's HVAC system and alerts facility operators when problems exist in the building. *Id.* ¶¶ 31, 36. The aim is to optimize efficiencies.

EMET contracted with JCI to install and operate the HVAC system at the 102 9th Street building because it believed JCI would "use its superior and specialized knowledge to provide honest and competent work." *Id.* ¶ 37. But from the start the system did not operate as promised and EMET received exorbitant electricity bills, experienced power outages, and incurred costly maintenance, upgrade, and repair bills. *Id.* ¶¶ 38-41. All the while, JCI assured EMET the system was functioning properly. *Id.* ¶ 42.

After several years of unsatisfactory service, EMET switched from JCI to Accu-Aire, another HVAC service provider. *Id.* ¶ 59. But the same problems continued—now Accu-Aire claimed the system was functioning properly and optimally while sending sub-par technicians to deal with the ongoing issues. *Id.* ¶¶ 60-68. EMET eventually hired outside technicians who "discovered that the building was equipped with a total building surge protector that would have protected Plaintiffs equipment from damage, had it been switched to the 'on' mode." *Id.* ¶ 57.

3

EMET brings negligence, fraud, and breach of fiduciary claims against JCI and Accu-Aire and a breach of fiduciary claim against Baker. *Id.* ¶¶ 69-150. EMET requests joint and several relief against the Defendants. *Id.* ¶ 151.

## IV. DISCUSSION

EMET moves to remand the case to state court and requests attorney fees and costs. JCI removed this case solely on the basis of diversity jurisdiction. No party disputes the jurisdictional amount required or that Baker and Accu-Aire are non-diverse defendants; they disagree as to whether EMET properly joined Baker and Accu-Aire. JCI contends EMET improperly joined Baker because a claim for breach of fiduciary duty cannot be made against him and that it mis-joined Accu-Aire under Fed. R. Civ. P. 20(a)(2).

As discussed below, the Court concludes that Accu-Aire was properly joined and remand is appropriate. Because "[t]he existence of even a single valid cause of action against an in-state defendant requires remand of the entire case to state court," the Court does not discuss whether Baker was properly joined. *Vargas v. Stone Container Corp.*, 144 F. App'x 365, 367 (5th Cir. 2005) (per curiam) (citing *Gray ex rel. Rudd v. Beverly Enterprises–Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004) (citing *Green v. Amerada Hess Corp.*, 707 F.2d 201, 208 (5th Cir. 1983) ("If even one of [the plaintiff's] many claims might be successful, a remand to state court is necessary."))).

## A. Improper Joinder

There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc); *accord Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (stating the two ways as "(1) the plaintiff *has* stated a claim against a

4

diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse"). This case only concerns the second method.

To successfully show improper joinder under the second method, a defendant must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant," which means that the defendant must show that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Mumfrey*, 719 F.3d at 401 (citations and emphasis omitted); *accord Int'l Energy*, 818 F.3d at 200 (substituting "nondiverse" for "in-state"); *Smallwood*, 385 F.3d at 573 (adopting "this phrasing of the required proof and reject[ing] all others, whether the others appear to describe the same standard or not"). The Fifth Circuit consistently reiterates that a claim of improper joinder fails when there is "a *reasonable* possibility of recovery, not merely a *theoretical* one." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (quoting *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)); *accord Smallwood*, 385 F.3d at 573 n.9 (agreeing that a "'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder").

When considering the issue of improper joinder, the Court's task is not to determine whether the plaintiff will recover on any claim asserted against the defendant or whether the plaintiff is even likely to recover; the Court instead must only consider whether there is a reasonable basis to predict that the plaintiff might be able to recover on any claim asserted against a nondiverse defendant. *See Smallwood*, 385 F.3d at 573; *Mumfrey*, 719 F.3d at 401. At this stage of the litigation, the plaintiff has no need to prove any claim. *See Johnson v. Zurich Am. Ins. Co.*, No. 3:11-CV-0344-P, 2011 WL 3111919, at *4 (N.D. Tex. June 29, 2011).

While the Court's inquiry is on the joinder rather than the merits of any particular claim, *Smallwood*, 385 F.3d at 573, the federal courts apply one of two alternate federal tests – one premised on Fed. R. Civ. P. 12(b)(6) and the other premised on piercing the pleadings by conducting a summary inquiry, *see Int'l Energy*, 818 F.3d at 207. But courts use both inquiries "to resolve the issue of jurisdiction, not merits." *See id.* at 210. Furthermore, "the existence of even a single valid cause of action against in-state defendants . . . requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004); *accord Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018).

JCI does not contend that EMET cannot state a claim against Accu-Aire. Rather, JCI argues that EMET fraudulently misjoined Accu-Aire to defeat diversity. Specifically, that Accu-Aire's joinder does not satisfy the requirements of permissive joinder under Fed. R. Civ. P. 20(a)(2). ECF No. 10 at 9-14.

## B. Fraudulent Misjoinder

The Eleventh Circuit recognized fraudulent misjoinder as grounds for denying remand in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1072 (11th Cir. 2000). Thereafter, the Fifth Circuit cited *Tapscott* favorably, but it has yet to expressly adopt its analysis. *See In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir. 2002) ("Thus, without detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case."); *see also Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 & n.5 (5th Cir. 2006) (citing *Tapscott*, 77 F.3d at 1360) ("If [the] requirements [of Rule 40] are not met, joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability

to recover against each of the defendants."). Nonetheless, district courts in the Fifth Circuit routinely apply *Tapscott's* reasoning. *See, e.g., Martinez v. Pfizer Inc.*, 388 F. Supp. 3d 748, 774 (W.D. Tex. 2019); *Cty. of Delta v. Purdue Pharma, L.P.*, No. 4:18-CV-095, 2018 WL 1440485, at *4 (E.D. Tex. Mar. 22, 2018); *Centaurus Unity v. Lexington Ins. Co.,* 766 F. Supp. 2d 780, 789 (S.D. Tex. 2011); *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins.,* 670 F.Supp.2d 555, 562 (N.D. Tex. 2009). Following these examples, this Court too applies the *Tapscott* analysis without adopting the Eleventh Circuit precedent. *See Brass Centerview 2016, LLC v. Nationwide Mut. Ins. Co.*, No. CV SA-16-CA-1048-OLG, 2017 WL 10841486, at *7 (W.D. Tex. Jan. 5, 2017), *report and recommendation adopted,* No. CV SA-16-CA-1048-OG, 2017 WL 10841485 (W.D. Tex. Jan. 24, 2017) ("For purposes of plaintiff's motion to remand, this Court follows other district court[s] and assumes, without deciding, that "fraudulent misjoinder is a . . . possible ground to support a finding of improper joinder.")

 *Tapscott* teaches that mere misjoinder does not establish fraudulent misjoinder. The attempt to defeat diversity jurisdiction by joining defendants that "have no real connection with the controversy" must be egregious. *Tapscott*, 77 F.3d at 1360. As interpreted by a sister court, "[t]he joined parties and claims must be without a palpable connection, causing the joinder to be egregious, totally unsupported[,] or a purposeful attempt to defeat removal." *Wells Fargo*, 670 F. Supp. 2d at 559. Indeed, "the misjoinder inquiry under *Tapscott* that might be done as part of [a] motion to remand is [broad] and forgiving." *Id.* And Fifth Circuit district courts to apply the analysis have overwhelmingly remanded to state court, "often on the ground that even if the parties have been misjoined, such misjoinder is not so egregious as to be fraudulent." *Texas Instruments Inc. v. Citigroup Glob. Markets, Inc.*, 266 F.R.D. 143, 152 & n.13 (N.D. Tex. 2010) (collecting cases). Consequently, and "[e]mpirically speaking, a finding of fraudulent misjoinder has proven to be a

disfavored basis for a district court's exercise of jurisdiction after removal, and it is reserved for a very small handful of the most extreme cases." *Id.* Thus, a *Tapscott* analysis requires two steps: first, whether misjoinder has occurred under the governing law; second, whether the misjoinder is so egregious as to be fraudulent. *Tapscott*, 77 F.3d at 1359-60.

### 1. Misjoinder Under Rule 40

The majority of Fifth Circuit district courts to engage a *Tapscott* analysis look to "whether a misjoinder has occurred by evaluating the appropriateness of joining the claims and parties under the governing *state* joinder law," Tex. R. Civ. P. 40(a). *Martinez*, 388 F. Supp. 3d at 773 (emphasis added); *see also Centaurus*, 766 F. Supp. 2d at 789 (noting "district courts in Texas have applied Texas law, in large part because the applicable Texas joinder rule is practically identical to Federal Rule 20(a) and because 'the claimant was required to follow the state's joinder rules when it initially brought suit'"); *Delphis, L.P. v. NFLP Holdings, Ltd.*, No. 3:10-CV-01583-F, 2010 WL 11561744, at *7 (N.D. Tex. Nov. 3, 2010) (collecting cases) ("Of the district courts to fully consider [whether to apply the state or federal rules], the vast majority apply state rules."). And most district courts have applied the *Tapscott* standard, which requires the joinder be "so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at 1360. *Cf. Delphis*, 2010 WL 11561744, at *9 (applying a "reasonable basis" standard for determining whether joinder was proper). This Court joins the majority of district courts, evaluating the joinder of claims and parties under the Texas joinder law and applying the *Tapscott* standard of egregiousness.

The applicable Texas joinder rule permits joinder of defendants "if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." Tex. R. Civ. P. 40(a). "Texas Rule 40 is

interpreted in light of a state policy that encourages broad joinder of multiple parties in the same action." *Texas Instruments, Inc.*, 266 F.R.D. at 148–149.

JCI contends that EMET has not asserted a right to relief against JCI and Accu-Aire that is joint, several, or in the alternative. ECF No. 10 at 10. It argues that because they have no business connection (or other relationship) and are competitors, JCI and Accu-Aire are "at best" "successive tortfeasors." *Id.* And, because the acts of JCI and Accu-Aire were successive, "the claims do not arise out of the same transaction or occurrence." Finding persuasive *In re EMC Corp*, this Court disagrees with JCI's contentions. *See In re EMC Corp*, 677 F.3d 1351 (Fed. Cir. 2012) (discussing the history of Rule 20, its intersection with Rule 13, and the logical relationship test).

*In re EMC Corp* examined joinder in a case that involved independent actor defendants, finding that "the mere fact that a case involves independent actors as defendants does not necessarily bring the case outside the scope of Rule 20." *Id.* 677 F.3d 1351, 1356-57. In concluding that "the fact that the defendants are independent actors does not preclude joinder," the Federal Circuit highlighted *United States v. Mississippi*, explaining:

> In that case, the United States sued Mississippi, three election commissioners, and six county voting registrars, alleging that the defendants were acting to deny the right of black citizens to vote. Five of the voting registrars moved for severance, and the district court held that they could not be sued jointly. The Supreme Court, however, held that joinder was proper under Rule 20 because the registrars were engaged in a "series of transactions or occurrences."

*In re EMC Corp.*, 677 F.3d at 1356 (internal citations omitted) (quoting *United States v. Mississippi,* 380 U.S. 128, 130-31, 142-43 (1965)). Thus, if this Court finds that JCI and Accu-Aire were engaged in a series of transactions or occurrences, the fact that they are independent actors or "successive tortfeasors" does not preclude joinder.

The *In re EMC Corp* court observed that Professors Wright and Miller and other courts have "noted the transaction-or-occurrence test of Rule 20(a) is similar to the transaction-or-

9

occurrence test of Rule 13(a) for compulsory counterclaims, which has been construed as requiring a 'logical relationship' between the claims." *Id.* at 1358 (citations omitted). After further observing that in addition to the Supreme Court, the First, Fifth, and Ninth Circuits have "adopted this approach," the Federal Circuit held:

> Claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim [ ] asserted against each defendant share an aggregate of operative facts. To be part of the "same transaction" requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts.

*In re EMC Corp.*, 677 F.3d at 1357-59 (citations omitted). Stated differently,

> independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' [alleged acts], which give rise to the individual claims [ ], must *share* an aggregate of operative facts.

*Id.* at 1358 (emphasis in original).

District courts in the Fifth Circuit have also applied the logical relationship test to "same transaction, occurrence, or series of transactions or occurrences" analysis. *See, e.g., Def. Distributed v. Grewal*, No. 1:18-CV-637-RP, 2021 WL 1614328, at *4 (W.D. Tex. Apr. 19, 2021); *Sanchez v. Schlumberger Tech. Corp.*, No. 2:17-CV-102, 2020 WL 5367005, at *2 (S.D. Tex. Sept. 7, 2020); *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2019 WL 10960486, at *9 (E.D. Tex. May 23, 2019); *Off. Stanford Invs. Comm. v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 3:11-CV-0303-N, 2015 WL 13739835, at *4 (N.D. Tex. July 22, 2015). This case meets the permissive joinder requirements, as the negligence, fraud, and breach of fiduciary claims brought against both JCI and Accu-Aire arise out of a series of transactions or occurrences, namely the assertion that JCI and, subsequently, Accu-Aire repeatedly claimed the HVAC system

was functioning properly and optimally while failing to identify and fix the problem.

The malfunctioning HVAC system is the primary factual basis for EMET's claims against JCI and Accu-Aire. The claims against JCI and Accu-Aire will both likely require testimony about technical details that answer what the system is, what it does, how it works, what the problems were, and how they were resolved. It is also likely that EMET will marshal some of the same evidence to prove its claims—as JCI pointed out, whether 102 9th Street had a building-wide surge protector and whether the surge protector was on or off is a question common to the claims against both it and Accu-Aire. EMET will also likely present many of the same witnesses in support of its case in chief against both JCI and Accu-Aire. *See Sanchez*, 2020 WL 5367005, at *2 ("Another way to look at the issue of 'same transaction' is whether there is a 'likelihood of overlapping proof and duplication in testimony.'").

Because the same claims are brought against both Accu-Aire and JCI and a claim of breach of fiduciary duty is brought against all the Defendants, the case clearly presents common questions of law. If the Court denied EMET's motion to remand and severed this action, EMET would be prejudiced by Defendants' ability to assign blame to an absent party in each case. Further, there is no prejudice to JCI by having to litigate state law claims in state court. Moreover, the result of finding fraudulent misjoinder, severing the claims, and returning the in-state Defendants to state court will be parallel cases proceeding in state and federal court. This runs counter to the purposes of the joinder rules.[1]

---

[1] *See Anderson v. Francis I. duPont & Co.*, 291 F. Supp. 705, 711 (D. Minn. 1968) ("Rule 20 is intended primarily to promote trial convenience through the avoidance of multiple lawsuits, extra expense to the parties, and loss of time to the Court and the parties."); *Ulysse v. Waste Mgmt., Inc. of Fla.*, 645 F. App'x 838, 839 (11th Cir. 2016) (per curiam) (same); *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 RER, 2015 WL 1966355, at *20 (E.D.N.Y. May 1, 2015) (same); *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) (same); *Thomas v. Mobil Oil Corp.*, No. CIV. A. 98-2153, 1998 WL 614657, at *2 (E.D. La. Sept. 10, 1998) (citations omitted) ("Moreover, under the Federal Rules of Civil Procedure, 'joinder of claims, parties and remedies is strongly encouraged.'"); *Stein v. Navient Sols., LLC*, No. A-17-CV-907 LY, 2018 WL 2124108, at *2 (W.D. Tex. May 7, 2018) ("Because the purpose of Rule 20 is to facilitate trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits, district courts

Additionally, the burden rests with the removing party and, as noted below, JCI did not present authority on all fours with this case. Moreover, "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). *See also Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 204 (5th Cir. 2016) ("After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned") (quoting *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)).

## 2. Egregiousness

Even if Accu-Aire was misjoined, the record does not demonstrate the egregiousness required to find fraudulent misjoinder, because to find fraudulent misjoinder, "[t]he joined parties and claims must be without a palpable connection, causing the joinder to be egregious, totally unsupported[,] or a purposeful attempt to defeat removal." *Wells Fargo*, 670 F. Supp. 2d at 559. "Fraudulent misjoinder is to be applied only in limited circumstances when failure to abide by applicable joinder requirements is 'just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possible cause of action.'" *Fort Bend Cty., Texas v. Sutter*, No. H-19-4038, 2020 WL 6126286, at *1 (S.D. Tex. Jan. 16, 2020) (citations omitted). Such circumstances are not present here.

## C. Fees and Costs

EMET contends the Court should award it fees and costs pursuant to 28 U.S.C. § 1447(c). Section 1447(c) permits a court to award "just costs and any actual expenses, including attorney

---

liberally construe permissive joinder of claims and parties in the interest of judicial economy."). *Cf. Gillon v. Fed. Bureau of Prisons*, 424 F. App'x 722, 726 (10th Cir. 2011) (denying joinder as "insufficient for purposes of Rule 20(a)," where each claim appeared "to involve separate incidents and for the most part involve different individuals.").

fees, incurred as a result of the removal." Whether fees and expenses should be awarded under §
1447(c) is a decision within the court's discretion and turns on the reasonableness of the removal.
*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Generally, the court "may award
attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable
basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be
denied." *Id.* In considering the reasonableness of the removal, the court looks only to "the objective
merits of removal at the time of removal, irrespective of the fact that it might ultimately be deter-
mined that removal was improper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir.
2000). JCI sought removal on the bases that Baker was improperly joined and Accu-Aire could
not be permissively joined under Fed. R. Civ. P. 20(a)(2).

As to Baker, JCI asserted that EMET had no reasonable basis of recovery in its sole cause
of action against Baker for breach of fiduciary duty, principally because EMET did not assert any
facts that Baker owed any duty to EMET "separate and apart from his employer JCI." ECF No. 1
at 4. The motion to remand argues that the facts in the original petition plausibly allege that both
JCI and Baker owed EMET an informal fiduciary duty, largely due to their specialized knowledge
about the Metasys system. ECF No. 6 at 7-12.

In general, a formal fiduciary duty arises "as a matter of law in certain formal relationships,
including attorney-client, partnership, and trustee relationships." *Bombardier Aero. Corp. v. SPEP
Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019) (citation omitted). An informal fiduci-
ary duty may arise from a confidential relationship "in which the parties have dealt with each other
in such a manner for a long period of time that one party is justified in expecting the other to act
in its best interest," be created by a "special relationship of trust and confidence which exists prior
to, and apart from, the agreement," or formed from "a moral, social, domestic or purely personal

13

relationship of trust and confidence." *Id.* (citations omitted). In a contractual relationship an informal fiduciary duty may also arise from the express language of the contract or "from the nature of the relationship between the parties to the contract, where it entails unequal bargaining power and the likelihood of abuse by the more powerful party." *Lovell v. Western National Life Ins. Co.,* 754 S.W.2d 298, 302 (Tex. App.-Amarillo 1988, writ denied); *see also Caton v. Leach Corp.,* 896 F.2d 939, 948 (5th Cir. 1990); *Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 675 (Tex. App.— Houston [1st Dist.] 1996, no writ); *Nance v. Resolution Trust Corp.,* 803 S.W.2d 323, 332–33 (Tex. App.—San Antonio 1990, writ denied) (citing *Fed. Dep. Ins. Corp. v. Coleman,* 795 S.W.2d 706, 708–09 (Tex. 1990)). Texas law imposes only a duty of good faith and fair dealing upon the informal fiduciary. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex. 1992); *see also Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016) ("when the parties are not formal fiduciaries but are nonetheless in a special or confidential relationship . . . Texas law imposes a duty of good faith and fair dealing (but not the whole bundle of associated fiduciary duties)").

To give full force to contracts, courts do not create such a relationship lightly. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d 429, 443 (Tex. App.-Dallas 2002, pet. denied). "[N]ot every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176–177 (Tex. 1997) (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 225–26 (Tex. 2002)). As the Fifth Circuit has noted, "Texas courts have refused to impose a tort duty of good faith and fair dealing on any of the following relationships: employer-employee, lender-borrower, medical

14

provider-patient, mortgagor-mortgagee, supplier-distributor, franchisor-franchisee, creditor-guar-antor, issuer and beneficiary of a letter of credit, or insurance company-third-party claimant." *Hux*, 819 F.3d at 781–82 (citations omitted). It then found that "[a]n ordinary student-professor rela-tionship is no different." *Id.* This Court also notes that the Texas Supreme Court has held that "the duty of good faith and fair dealing does not arise in ordinary commercial transactions." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs., Inc.,* 960 S.W.2d 41, 52 (Tex. 1998). And that "mere subjective trust does not . . . transform arm's-length dealing into a fiduciary relation-ship." *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998) (quoting *Swanson,* 959 S.W.2d at 177).

As to Accu-Aire, EMET asserted that this Defendant was properly joined under Fed. R. Civ. P. 20(a)(2), and JCI argued it wasn't. Part of the disagreement between EMET and JCI fo-cused on the "transaction or occurrence" element of the joinder rules. In the absence of a "gener-alized test," "courts have adopted a case-by-case approach" for analyzing the "transaction or oc-currence" requirement of the joinder rules. Alan Wright, Arthur R. Miller, & Mary Kay Kane § 1653 Permissive Joinder of Parties under Rule 20(a)—The Transaction and Common-Question Requirements, 7 Fed. Prac. & Proc. Civ. § 1653 (3d ed.). "As a result, it is necessary to extrapolate from the decided cases what is likely to meet the Rule 20(a) transaction or occurrence standard in a particular case." *Id.* Notably, in the remand briefing addressing permissive joinder, neither party cited authority directly on-point with this case, nor did either party provide an extrapolation of cases that put the transaction or occurrence question beyond debate.

In light of the relevant case law on fiduciary duty and the case-by-case approach taken by courts when analyzing whether a particular factual situation constitutes a transaction or occurrence, the Court finds JCI did not lack an objectively reasonable basis for seeking removal at the time of

removal. Accordingly, EMET is not entitled to an award of attorney fees and costs.

## V. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiff EMET, LLC's motion to remand (ECF No. 6) is **GRANTED**. EMET's request for fees and costs is **DENIED**. This case is remanded to the 438th Judicial District Court of Bexar County, Texas. All pending motions are **DENIED AS MOOT**. Upon remand, the Clerk of Court is **directed to close this case**.

It is so ORDERED this 7th day of October 2021.

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**